## UNITED STATES, Appellee

v.

## VINCENT C. JONES, Corporal, U. S. Army, Appellant
## 2 USCMA 80, 6 CMR 80

No. 288

Decided December 17, 1952

LT. COL. George E. Mickel, U. S. Army, and 1ST LT. Richard M. Hartsock, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S. Army, MAJ. Augustus A. Marchetti, U. S. Army, and 1ST. LT. Eugene L. Grimm, U. S. Army, for Appellee.

Opinion of the Court

PAUL W. BROSMAN, Judge:

Appellant has been convicted by general court-martial sitting at Heidelberg, Germany, under four specifications alleging: (1) wrongful possession of marihuana during the last week of January 1951; (2) wrongful introduction of marihuana into station for sale on February 5, 1951; (3) wrongful possession of marihuana on February 16, 1951; and (4) wrongful attempt to introduce marihuana into station for sale on February 16, 1951. All alleged offenses were specified under Article of War 96, 10 USC § 1568.[1] The court sentenced the accused to be dishonorably discharged, to forfeit all pay and allowances, and to be confined at hard labor for two years. The convening authority approved, and a board of review has affirmed the findings and sentence. We granted appellant's petition for review, limited, however, to the following questions: (1) whether there was sufficient

---

[1] Since the arraignment took place and trial commenced on May 29, 1951, the provisions of the Manual for Courts-Martial, U. S. Army, 1949, govern the trial.

evidence as a matter of law to support the findings of guilty under all specifications; and (2) whether Specifications 3 and 4 involve an improper multiplication of charges. It is important to note that appellant voluntarily confessed guilt of all offenses charged. Consequently, our consideration of the evidence must be limited to whether it provided sufficient corroboration to sustain the confession within the requirements of the Manual for Courts-Martial, U. S. Army, 1949.

## II

The first specification alleged wrongful possession of marihuana during the last week of January 1951. ■■■■■■ We find that the only evidence with respect to this offense consists of testimony of one Sergeant Eubanks, initially a cohort of appellant, but subsesquently the informer who led to his downfall. This witness testified that during the latter part of January 1951 appellant told him that he knew a man "who could get him some marihuana" and exhibited a package which he said contained that drug. Subsequently the sergeant stated that appellant delivered the first package to him on or about the 4th or 5th of February. For reasons which will become apparent in our consideration of the evidence bearing on Specification 2, this testimony falls far short of the proof necessary to corroborate appellant's confession of guilt under Specification 1. Accordingly, the conviction based on that specification must fall.

## III

The second specification alleged the wrongful introduction of a quantity of marihuana into station for sale on February 5, 1951. The evidence to support this specification, apart from appellant's confession, came to this. Sergeant Eubanks testified that subsequent to their initial conversation in January, he told appellant that he knew a German girl who wished to purchase marihuana. Thereafter, on or about February 5, 1951, at the Keller Club of the Henri Kaserne in Munich, appellant delivered to him a small brown paper bag, representing it as containing marihuana. The bag was light in weight, and the substance within soft and pliable. The sergeant did not open the bag, but delivered it shortly thereafter to the German girl, who was to pay one hundred dollars for it. When she was to pay is not entirely clear, and the ultimate disposition of the package is not disclosed at all.

The girl was summoned as a witness for the Government. After she testified that she received two packages purportedly containing marihuana, one from appellant on January 31 or February 1, and the other from Eubanks on February 5, the law member announced that he would entertain a motion to strike her testimony. The motion was promptly made by defense. Her testimony was ordered stricken, and the court directed to disregard it. The basis for this action—as stated by the law member—was failure to link her activities with appellant. She had testified that she "had seen" appellant before the described transactions, although she did not know him "personally."

This ruling of the law member must be the subject of parenthetical comment with the thought that we may furnish guidance to law officers faced with similar situations in the future. We believe that the law member, in his wholly commendable desire to protect fully the rights of the accused—and because of possible haste—fell into error. The witness was certainly evasive concerning her connection with appellant—as well she might have been. We dare say that when the story of appellant's arrest became known, a number of persons ceased to "know" him, although they might have conceded that they "had seen" him. The witness testified explicitly that she had received a package of "marihuana" from appellant on January 31 or February 1. Yet that testimony was excluded from consideration by the court-martial and cannot, therefore, be considered by us. In addition, we think the girl's testimony, as to receipt of the package from Eubanks, would have been relevant to the present charge against appellant. Indeed, her receipt of the parcel would appear to have constituted an integral part of a planned series of transactions originating with him. It would have

**83**

been extremely helpful to know what disposition was made of the package received from Eubanks, for the record certainly conveys an impression that the witness was playing an active role in an incipient narcotics ring. We cannot avoid thinking that she might have been able to shed light on a number of relevant topics, if permitted to continue her testimony under examination by the Government.

Reverting to the problem of the second specification, the evidentiary weakness asserted is that there was no proof that the substance in the brown paper bag passed to Eubanks on February 4 or 5 was marihuana—or, stated somewhat differently, that there was no proof that appellant possessed marihuana on February 4 or 5 which he could have passed to Eubanks. Appellant confessed to having passed the package *of marihuana* to Eubanks, and the latter testified that appellant delivered a package to him representing it *as containing marihuana.*

The Manual for Courts-Martial, U. S. Army, 1949, paragraph 127a, page 159, states the general rule:

". . . A court may not consider the confession of an accused as evidence against him unless there is in the record other evidence, either direct or circumstantial, that the offense charged has probably been committed; in other words, there must be substantial evidence of the corpus delicti other than the confession. Other confessions or admissions are not such corroborative evidence. . . ."

In assessing the evidence produced, it is apparent, first, that it must be *independent* of the confession. ■ Paragraph 127a, of the Manual, supra, also makes clear the view that the corroborative evidence required need not establish every element of the offense, but rather need only establish that "the offense charged has probably been committed." Examining the evidence here adduced bearing on whether appellant possessed marihuana on February 4 or 5, 1951, exclusive of his own confession, we have only the witness Eubanks' testimony that appellant on one of those dates passed to him a brown paper bag containing a light, soft, and pliable substance, representing it as containing marihuana. Eubanks did not examine the contents of the bag, but in turn passed it to a third person. In assessing this evidentiary structure, said to provide the necessary corroboration of appellant's confession, we must at the outset take from it his statement, as related by Eubanks, that the bag contained marihuana. This must be stricken from our consideration in response to the Manual's express command that: "Other confessions or admissions are not . . . [admissible] corroborative evidence." Manual, paragraph 127a, supra. Although appellant's statement may not have been a "confession," and might not—very strictly speaking—have been an "admission," it manifestly falls within the Manual's exclusionary rule. The evident sense of that rule is to prevent corroboration solely on the basis of other statements of the accused. If appellant's statement to Eubanks could be utilized to corroborate his confession, the rule would be empty indeed.

With this item eliminated, all that remains is Eubanks' testimony that, on February 4 or 5, he received from appellant a brown paper bag containing a light, soft, and pliable substance, the contents of which he did not examine, for he passed the bag shortly thereafter to another. The conclusion the members of the court-martial would necessarily be required to draw from this—to provide a sufficient foundation for consideration of appellant's confession—would be that the substance in the bag was—or probably was—marihuana. Obviously, that conclusion from such equivocal evidence could be nothing other than speculation in purest form. As such it cannot be permitted to stand. United States v. Florence (No. 207), 1 USCMA 620, 5 CMR 48, decided August 26, 1952. Without it, the corroborative evidence to support appellant's confession fails completely. The confession, therefore, cannot provide the basis for appellant's conviction under Specification 2, and the conviction thereon must be reversed.

In our consideration of this matter we have not overlooked the fact that it was shown at the trial that ▆▆▆▆▆▆ ▆ in *one* other transaction—that upon which Specifications 3 and 4 were based—appellant had in fact possessed a substance established by chemical analysis as marihuana. It is hornbook law, however, ▆▆▆▆▆▆ ▆ that evidence of guilt of other offenses is not admissible to prove guilt of a specific offense charged. People v. Goldstein, 295 NY 61, 64, 65 NE2d 169; Wigmore, Evidence, 3d ed, § 300 et seq. Narrowly defined exceptions have been recognized. People v. Molineux, 168 NY 264, 61 NE 286. Where evidence of other offenses is admitted, it is received for limited purposes only, generally restricted to establishing knowledge, intent, or design of the accused. Wigmore, supra. However, were we permitted to consider the evidence bearing on Specifications 3 and 4 in connection with the offense alleged in Specifications 1 and 2, we would not be aided in our search for corroboration—for the reason that it may only be considered as bearing on the knowledge, intent, or design of the accused. Here the evidentiary gap in the first two specifications relates to the *nature* of the substance therein charged to have been in accused's possession—a matter quite distinct from his knowledge, intent, or design.

The problem of proof of other offenses is rendered more difficult in court-martial proceedings, where it is the rule rather than the exception that an accused be tried for several—and often unrelated—offenses at the same time. In civilian criminal procedure the general rule is otherwise. See Rule 8(a), Fed. Rules Crim. Proc. For this reason civilian practice avoids as far as possible the human tendency of triers of fact to conclude that one charged with, say, five offenses, of which the proof of three is substantial, probably committed the remaining two. However, in military practice, where the use of multiple charges is common, this tendency is ever present, and we—as well as other agencies of military law administration—must be alert to prevent the conviction of an accused for one offense because his guilt of another is clear. The present case may serve as an example of this evil. The burden rests always on the Government to establish guilt of every offense charged, and the satisfaction of this burden requires the production of evidence—not circumstantial inferences of a purely speculative character.

Before leaving this aspect of the case, we think it also appropriate to admit fairly the difficulty we have experienced in resolving in this connection the conflict between what we have felt as men and what we know as judges. As men we are at least reasonably certain that appellant's confession of guilt of the offenses charged in Specifications 1 and 2 was not a false one. Consequently his conviction thereon was not—in a specific sense—a miscarriage of justice. However, we sit as judges to see that the law as given us is fairly applied. Congress has explicitly imposed upon the courts of the military system the requirement of confession corroboration —and we have inherited as well a legacy of law developed and nurtured through years of experience in civilian criminal courts. We—and we are not alone in this thought—frankly recognize that the requirement of corroboration is overemphasized not infrequently. Originally and properly developed to prevent convictions on the basis of false confessions, it is at times applied with offensive technicality. It is distinctly arguable, we believe, that whatever danger of this evil may exist today may safely be met by other safeguards. Wigmore, §§ 866, 867. However, we may not reject existing law but must apply it. On this same subject, Judge Learned Hand, also dubious of the length to which corpus delicti has been carried, has spoken as follows in Daeche v. United States, 250 F 566, 571–572 (CA2d Cir):

"... But we should not feel at liberty to disregard a principle so commonly accepted, merely because it seems to us that such evils as it corrects could be much more flexibly treated by the judge at trial ...."

The rule precluding guilt of other offenses as proof of guilt of a particular offense we believe to be based on sound reason. Though in many cases it too

may seem unduly technical—even unrealistic—actual danger exists that accused persons may be convicted of offenses of which they are innocent largely on the basis of the conclusion that they have committed other crimes. The existence of this principle is fully warranted. However, neither this rule nor that demanding corroboration need constitute an insurmountable obstacle in the usual case. We have little doubt that diligent investigation will uncover sufficient evidence corroborative of any true confession, and the case for the Government must be weak indeed if evidence of other offenses is necessary to establish guilt. The record here suggests the applicability of both of these observations.

## IV

Specification 3 alleged wrongful possession of marihuana on February 16, 1951, and Specification 4 charged a wrongful attempt to introduce marihuana into station for sale on February 16, 1951. Both offenses grew out of the following facts. Shortly after the transaction of February 5, Sergeant Eubanks determined to end his narcotic dealings with appellant and reported his activities to appropriate authorities. On February 16, Eubanks, at the instigation and in the company of a CID agent, called appellant by telephone and requested that he bring some more "stuff" that evening to the Augsburg Autobahn Snack Bar. Appellant agreed to do so. At the appointed hour, Eubanks, together with several CID agents, was at the snack bar—Eubanks at a table alone, the agents scattered throughout the room. Appellant came by automobile and placed the vehicle in the parking lot attached to the establishment. He left the car and entered the building. After conversation with Eubanks, the two men arose and departed. When they had left the building the agents accosted appellant and made the arrest. After searching him, they approached the automobile, where an investigation brought to light two woman's stockings wrapped in newspaper and filled with an unknown substance. A chemical analysis subsequently established that the material in the stockings was marihuana.

Appellant has advanced no argument that this evidence was insufficient to support the wrongful possession charge alleged in Specification 3. His failure to do so is understandable indeed, for the evidence related above clearly sustains that specification. However, he does assert the existence of numerous imperfections in the evidence of attempt to introduce into station for sale—the offense charged in Specification 4.

He urges specifically the absence of record proof that the Augsburg Autobahn Snack Bar was a military "station." We note at the outset of our consideration of this question the following colloquy which took place after the law officer had questioned the "into station" allegation of Specification 4, and inquired of defense counsel if he wished to comment. He received the following reply:

"No, sir, I don't. I believe, for the purposes of expediting the trial, that every square inch of soil in the American zone of occupation is considered a military post; is that right?"

Apparently choosing to dissociate himself from such an extremely broad view, counsel for the Government promptly said:

"But we are not placing our case on any such vague technicality. In the old days where you had a small kaserne and your snack bar inside of it or your old-time small PX sitting there, no one would question that that is in camp. Because we run down two or three streets separated by civilian distances to get to these same structures, seems to me not to change the reality of the snack bar and PX on American property in every real sense of the word."

And that was the end of the matter. Our initial observation has to do with the sharp inconsistency between the appellant's two positions. At the trial his counsel not only failed to demand proof when invited to do so, but expressly admitted the "station" character of the

snack bar. Yet now that the case is before an appellate court, he complains that there is no evidence of this fact. Nevertheless, out of an abundance of forbearance, and because the case has properly been considered on other issues, we shall consider the sufficiency of the evidence to establish the military character of the establishment.

Quite clearly the court could have taken judicial notice of the snack bar's character as a "station," but there is no notation in the record, as required by proper procedure, that this action was taken. There is, however, a doctrine analogous to that of judicial notice which furnishes the short answer to appellant's argument. That doctrine is explained as follows in Wigmore, Evidence, 3d ed, § 2570:

"In general, the jury may in modern times act only upon evidence properly laid before them in the course of the trial. But so far as the matter in question is one upon which men in general have a common fund of experience and knowledge, through data notoriously accepted by all, the analogy of judicial notice by the judge obtains here also, to some extent, and the jury are allowed to resort to this information in making up their minds."

In military trials it would hardly be necessary that a fact, to be regarded by the court-martial under this theory, be notorious to men in general. It is indeed enough if it is notorious to military men—and particularly to those in the area involved. Here it appears that the snack bar is "a familiar geographical location in the Augsburg area . . . operated by the European Exchange Service which is controlled by the European Command as a military facility and installation." The verbal exchange quoted earlier indicates clearly that the character of the snack bar was conceded to be familiar to all present. Accordingly, we find no error in the court's evident conclusion that the snack bar was a military "station."

Appellant next argues that there was insufficient evidence of attempt to introduce. The Manual for Courts-Martial, 1949, paragraph 183, defines an attempt to commit a crime as "an act done with intent to commit that particular crime, and forming a part of a series of acts which will apparently, if not interrupted by circumstances independent of the will of the actor, result in its actual commission." It proceeds to point out that "An intent to commit a crime not accompanied by an overt act to carry out the intent does not constitute an attempt," and states further that mere preparation to commit a crime does not constitute an attempt to commit that crime. Similar provisions are contained in the Manual for Courts-Martial, United States, 1951, paragraph 159. Appellant contends that he failed to pass beyond the preparatory stage in the transaction arranged for February 16. However, the evidence is overwhelmingly to the contrary. It is unnecessary that we determine whether the attempt might have been complete at some point prior to appellant's arrival at the snack bar parking lot, for he did in fact reach that destination. When he did so, the offense of introduction into station was complete, so that the evidence in truth establishes more than the required overt act. With the substantive offense of introduction into station established, there was, of course, sufficient proof of an *attempt* to introduce.

The drug having been introduced into station, the remaining inquiry has to do with the question of sale. Did the accused intend to sell and, if so, where did he propose that the sale be consummated? We may dispose of these issues with dispatch. Appellant brought a quantity of marihuana to the snack bar at Eubank's request. There arise two possible conclusions under the evidence in this case: (1) that he proposed to donate the drug to Eubanks, or (2) that a sale was contemplated. To state the alternatives is to provide the answer. Of course he intended a sale! In view of all the evidence, the former conclusion would be preposterous. Surely, too, there was ample evidence to furnish a foundation for the court's conclusion

that the transaction was to be consummated at the snack bar.

## V

We turn finally to the problem of asserted multiplicity in Specifications 3 and 4. It need not detain ▌ us long. Certainly the offense of introducing a forbidden product into station is separate and distinct from one involving mere possession of the product. However, the Manual for Courts-Martial, US Army, 1949, paragraph 80a, provides that:

"If an accused is found guilty of two or more offenses constituting different aspects of the same act or omission, the court will impose punishment only with reference to the act or omission in its most important aspect."

Whether, therefore, the offenses alleged in Specifications 3 and 4 were separate, it is clear that the sentence adjudged on all four specifications is supported by the conviction on Specification 4 alone. That being the case, it cannot be said that the court did not comply with the requirements of the Manual then in effect, and there is nothing of which the accused may legitimately complain.

## VI

It follows from what has been said that the decision of the board of review must be reversed as to Specifications 1 and 2, and affirmed as to Specifications 3 and 4. Although the sentence is supported by the conviction on Specification 4 alone, in view of our reversal of convictions of two of the four crimes charged, the board of review may wish to reconsider the question of appropriateness of sentence. The record, therefore, is remanded to The Judge Advocate General, United States Army, for reference to the board of review which considered the case, or other action not inconsistent with this opinion.

Chief Judge QUINN concurs.

Judge LATIMER concurs in result.