UNITED STATES

v.

Sergeant Jerome J. DILLON, FR 261–04–2056 Headquarters, 4756th Air Base Group Aerospace Defense Command.

ACM S24470.

U. S. Air Force Court of Military Review.

25 March 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Lieutenant Colonel Anthony C. Vance, USAFR.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Gilbert J. Regan.

Before BUEHLER, HERMAN and ORSER, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a special court-martial, with members, the accused was convicted, consonant with his pleas, of five specifications of larceny in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The approved sentence is a bad conduct discharge and reduction to the grade of airman.

Of the two issues assigned by appellate defense counsel, the more significant is whether the authentication of the record of trial by the trial counsel in the "absence" of the military judge was permissible. We hold that it was.

Article 54(b), Code, supra, provides that the record of the proceedings of a special court-martial shall be authenticated in the manner prescribed by the President. Paragraph 82f of the Manual for Courts-Martial, 1969, (Rev.), the President's implementation of the Codal directive, specifies that the trial transcript is to be authenticated by the military judge. It further provides, inter alia, that the trial counsel who was present at the conclusion of the trial shall authenticate the record if the military judge is unable to do so because of his "death, disability, or absence."

In the case of *United States v. Cruz-Rijos*, 24 U.S.C.M.A. 271, 51 C.M.R. 723, 1 M.J. 429 (1976), the United States Court of Military Appeals most recently addressed the issue of substitute authentication. There, the trial counsel authenticated the transcript in the "absence" of the military judge after making over 800 *ex parte* corrections in a 156-page record. In

fact, the military judge was present at the trial situs and presiding over other cases 12 days after the trial counsel authenticated the record in his "absence". He remained there at least 10 days prior to the action of the convening authority. The military judge was assigned to hear cases at the trial situs and one other installation, dividing his time between the two. Of further significance, a military judge memorandum from the Chief of the Army's Trial Judiciary, since rescinded, permitted record authentication by the trial counsel or court reporter in accordance with paragraph 82f of the Manual in instances where the local staff judge advocate determined the military judge would be unavailable for more than 48 hours.

In confronting the issue, the Court recognized that the judicial process often involves a balancing of the competing important interests of speedy appellate disposition and a fair and orderly review of trial proceedings. In striking this balance, stressed the Court, the importance of the neutrality aspect as it relates to authentication, as well as other judicial functions, is significant. Following a reminder that the trial counsel's primary function is that of a partisan advocate, the Court observed that "to eliminate any appearance of impropriety, the judicial inclination necessarily leans toward restricting [the trial counsel's] performance of judicial functions to emergency situations." 1 M.J. at 431.

The Court then concluded that the military judge was present within a reasonable time after the court reporter completed the record. On that basis and for the additional reason that utilization of the military judge to authenticate the record would not have resulted in a violation of the *Dunlap* speedy disposition standard,[1] the Court held that the absence provision of the Manual was impermissibly invoked. *Id.*

The lesson of *Cruz-Rijos* is clear. The "absence" provision of paragraph 82f of the Manual, conjoined as it is with the "death, disability," language, is *not* to be routinely invoked. Substitute authentica-

1. *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974).

tion by the trial counsel must be reserved for situations where the military judge is actually unavailable to personally authenticate the transcript within a reasonable time after its completion. What is a reasonable time depends, of course, on the relevant circumstances of a given case. For example, if utilization of the military judge to authenticate the transcript would necessarily result in a violation of the 90-day speedy disposition standard mandated in *Dunlap v. Convening Authority, supra,* substitute authentication would not only be eminently reasonable, but utterly essential.[2] With this guidance in mind, we proceed with our evaluation of the instant circumstances.

The trial was held on 12 October 1976, at Tyndall Air Force Base, Florida. The accused providently pleaded guilty and there were no complex issues for resolution. The 126-page record of trial was completed by the court reporter on 20 October 1976, and on the basis of an anticipated absence of the military judge from 25 October until 17 November 1976, authenticated by the trial counsel on 28 October 1976. The convening authority, who exercised only special court-martial jurisdiction, approved the adjudged sentence by action dated 2 November 1976. Articles 60 and 64, Code, supra.

■ As the approved sentence included a bad conduct discharge, the record of trial was thereafter forwarded for review by the appropriate officer possessing general court-martial authority. Paragraph 84*d,* Manual for Courts-Martial, supra; see Article 65(b), Code, supra. The military judge personally authenticated the record on 17 November 1976. The general court-martial authority's staff judge advocate submitted his written review on 13 December 1976, and the reviewing authority acted on the record on 27 December 1976.[3]

■ The military judge's assigned duty station is Maxwell Air Force Base, Alabama. His normal territory of judicial responsibility encompasses Air Force installations in the States of Alabama, Arkansas, Florida, Louisiana, North Carolina, South Carolina, and Tennessee, as well as the Panama Canal Zone. In this instance, the substitute authentication was not because the military judge was engaged in trials elsewhere within his circuit. Rather, the trial counsel authenticated the transcript because during the period of from 25 October until 17 November 1976, the judge was tasked with the duty of participating in what is described in the record as base closure hearings at three Air Force bases in Texas, one in Oklahoma, and still another in Alabama (the latter was not, incidentally, at the judge's home base). We have more specifically been informed that the military judge served as presiding officer at public hearings relating to environmental impact statements required in connection with the planned closure of each of the installations concerned.

Initially, we agree with appellate government counsel that even assuming that by 20 October 1976, the record was complete to

---

2. Air Force policy on record authentication reflects this concern. Change 2 to Air Force Manual 111–1, 8 October 1976, provides in paragraph 13–13:
   Record Authentication. Military judges and counsel are encouraged to authenticate records, but the final decision in this matter rests with them. Substitute authentication may be necessary to avoid a risk of exceeding time limits of confinement between sentencing and action (*Dunlap v. Convening Authority* [supra]).

3. An argument can be made that the military judge's personal authentication before the review of the staff judge advocate and the action by the reviewing authority totally moots the issue before us. In our opinion, however, in a trial by special court-martial involving, as here, two required action authorities, the verity of the record for appellate purposes must be established by sanctioned authentication prior to initial action. The convening authority, may approve only such findings of guilty and the sentence, or any amount thereof, as he finds correct in law and fact and he in his discretion determines should be approved. The initial action thus serves two important functions. It provides the accused his initial opportunity for possible amelioration of the findings and sentence of the court. And, it serves as a limiting factor, for the reviewing authority may act only with respect to the findings and sentence previously approved by the convening authority. Manual for Courts-Martial, supra, paragraph 85*d.*

the point of being ready for packaging, registering, and placing in mail channels to the military judge,[4] there was but scant time for it to have reached him at his circuit office[5] before he was required to depart for the first of his base closure hearings. The 20th of October was a Wednesday, and the 23rd and 24th of that month were a Saturday and Sunday. Understandably, therefore, the record contains no indication that an effort was made to mail the record to the military judge's office prior to 25 October 1976.

Unlike the mistake-riddled record in *Cruz-Rijos*, supra, the record before us contains no *ex parte* corrections by the trial counsel. Furthermore, the military judge, albeit belatedly (see footnote 3, supra), personally added his own authentication to the record and made no indicated changes. In our view, this ratifying action by the military judge, which antedated both the review by the staff judge advocate and the action by the reviewing authority, suffices to allay all genuine concern for any appearance of impropriety otherwise engendered by the trial counsel's authentication.[6] And, of pragmatic import, a finding that the trial counsel impermissibly usurped the judicial function of the military judge would serve no useful purpose. In *Cruz-Rijos*, the directed remedy for such error was proper authentication followed by a new review and action. Here, in light of the military judge's personal authentication, a mandate by this Court that the record be returned for that same remedy would be entirely ritualistic, as it would involve no conceivable change in the record.

The trial transcript is neither lengthy nor complex. Yet, absent authentication by the trial counsel, the indication is there would have been a three-week delay before it could have been authenticated by the military judge, acted upon by the convening authority, and thereafter forwarded for the comprehensive review by the staff judge advocate and the action of the general court-martial reviewing authority. As in *Cruz-Rijos*, a *Dunlap* violation was not a necessary consequence of authentication by the military judge. Nonetheless, the period of anticipated delay to obtain his authentication was relatively lengthy considering the nature of the case. In light of these circumstances, and bearing in mind that the military judge eventually authenticated the record, we conclude that the assigned error is without merit.

■ In their remaining complaint of wrong, appellate defense counsel assert that the Government erred by failing to provide the accused a copy of the record before the convening authority took his action. As counsel correctly note, the accused was not furnished a copy of the record until two days after the convening authority's action.

In the earlier referenced case of *United States v. Cruz-Rijos*, supra, the Court of Military Appeals citing Article 54(c), Code, supra, declared it error to fail to provide the accused with a copy of the record as soon as it was authenticated. However, the Court coupled such declaration with the qualification that in situations where the accused and his counsel are separated, the spirit of Article 54(c) and effective representation of the accused can be satisfied by serving the transcript and review on counsel.

---

4. In connection with this assumption appellate government counsel aptly note that after a record of trial is transcribed and before it is authenticated, the trial counsel is adjured to examine it carefully for errors or omissions and make necessary corrections. Manual for Courts-Martial, supra, paragraph 82e.

5. In that regard appellate defense counsel do not contend that the military judge was at the trial situs on the date the record was completed. Absent any indication to the contrary, we proceed on the assumption that on that date he was at his unit of assignment in Alabama.

6. We believe the case of *United States v. Hill*, 22 U.S.C.M.A. 419, 47 C.M.R. 397 (1973), lends support to this conclusion. In *Hill*, preparation of the review of the staff judge advocate on the basis of an unauthenticated record was held erroneous, but not prejudicially so, where a comparison of the review with the authenticated record revealed no significant errors.

In the instant case there is no indication the accused and his counsel were separated. However, as noted by appellate government counsel, the transcript reflects the defense counsel was provided a copy of the record for his examination on the same date it was authenticated by the trial counsel and some five days before the action of the convening authority. Counsel, therefore, had an opportunity to file a brief pursuant to Article 38(c), Code, supra, if he so desired, prior to the convening authority's action. Moreover, the accused was provided a copy of the record well before the review of the staff judge advocate and action by the reviewing authority. Finally, as government counsel further point out, both the accused and his counsel had a copy of the record for their use in preparation of the response contemplated by *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). Under the circumstances, we find that the spirit, if not the letter, of Article 54(c) was satisfied and the accused suffered no harm.

For the reasons stated, the findings of guilty and the sentence are

AFFIRMED.

BUEHLER, Senior Judge, and HERMAN, Judge, concur.