UNITED STATES, Appellee

v.

JACK COULTER, Basic Airman, U. S. Air Force, Appellant

3 USCMA 657, 14 CMR 75

No. 2786

Decided January 22, 1954

COL Kenneth B. Chase, USAF, and CAPT Daniel O'Leary, USAF, for Appellant.

LT COL Harold Anderson, USAF, and 1ST LT Anthony Ortega, Jr., USAF, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Tried by special court-martial convened at Wichita Municipal Airport, Wichita, Kansas, the accused was found guilty of an offense in violation of Article 91, Uniform Code of Military Justice, 50 USC § 685, and of being drunk and disorderly in quarters in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. Evidence of four previous convictions was admitted, and after due deliberation the court imposed a sentence which included a bad-conduct discharge and confinement at hard labor for six months, the maximum penalty which can be imposed by a special court. The findings and sentence were approved by the convening authority. Thereafter, they were approved by the general court-martial authority and, with minor modification, by a board of review. We granted review to determine the legal propriety of trial counsel's subsequent action in connection with the post-trial review for the convening authority.

Allied papers in the record show that, after trial, the accused was interviewed

by an officer designated as the Acting Assistant Staff Judge Advocate in what was termed a "Post Trial Clemency Interview." This officer submitted a detailed report covering accused's military and civilian background, his apparent personality traits, and the impressions that the accused made upon the interviewer. The report concluded with a recommendation that the bad-conduct discharge be suspended and that the accused be sent to the Retraining Center, Amarillo, Texas, for rehabilitation training. The Staff Judge Advocate, however, did not concur in the recommendation of the Acting Assistant. On the contrary, he prepared for the convening authority, a brief report of his own, in which he emphasized the accused's four previous convictions. He characterized the accused as a "worthless individual" and a "liability to the Air Force." This report concluded with a statement that the "manifest discrepancies in the character of the accused make a recommendation that the sentence as adjudged be approved and duly executed mandatory." The Staff Judge Advocate was the same person who had acted as trial counsel in the case.

Under the Uniform Code no person may serve in the same case in the dual role of trial counsel and Staff Judge Advocate to the reviewing authority. Such conduct is proscribed in mandatory terms by Article 6(c), Uniform Code of Military Justice, 50 USC § 556. That Article reads as follows:

"ART. 6. Judge advocates and legal officers.

(c) No person who has acted as member, law officer, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, or investigating officer in any case shall subsequently act as a staff judge advocate or legal officer to any reviewing authority upon the same case."

Consequently, there is patent error in the twofold performance in this case. Thus, the issue is limited to a consideration of the effect of the error.

Error may require reversal of a conviction on the basis of either general or specific prejudice. United States v. Keith, 1 USCMA 493, 4 CMR 85; United States v. Lee, 1 USCMA 212, 2 CMR 118. Government counsel have urged that the error here be evaluated from the standpoint of specific prejudice. Conversely, appellate defense counsel have argued with equal vigor for the application of the doctrine of general prejudice. In view of the purpose and the language of Article 6(c), supra, we conclude that the error is one which evokes the principles of general prejudice.

The obvious purpose of the lawmakers in prohibiting trial counsel from subsequently acting as the Staff Judge Advocate on the review of the same case was to assure the accused a thoroughly fair and impartial review. Hearings, Subcommittee of the House Committee on Armed Services on HR 2498, 81st Congress, 1st Session, pages 898, 901. Although considered in a somewhat different connection, we pointed up the importance of the right to an impartial review in United States v. Gordon, 1 USCMA 255, 2 CMR 161. There we said (page 262):

"Again, the right to an impartial review is an important right which must be recognized in the military judicial system and an accused is entitled to have the record reviewed and the limits of his sentence fixed by one who is free from any connection with the controversy."

We also noted in that case that human behavior is such, that when a person, interested in the outcome of a trial, is called upon to pass on the results of that trial, his decision is necessarily different from that of a person who had no interest in the matter. United States v. Gordon, supra, page 262. Applying these principles to the present situation, the danger of a partial and biased review is so strong that prejudice must be presumed.

Although there is no question about the sufficiency of the evidence to support the findings of guilty, prejudice affecting the sentence is just as subject

to condemnation as prejudice which influences the findings. United States v. Keith, supra; United States v. Gordon, supra. The initial review in its sentence phase has been compared to the probation report in civilian practice, in that it includes detailed information on the civilian and military background of the accused and his potential for rehabilitation. See Feld, The Court-Martial Sentence, Fair or Foul?, 39 Va L Rev 319, 327 (April 1953). Selection and arrangement of the background material undoubtedly play an important part in suggesting the ultimate conclusion. We would have to close our eyes to reality and reason to conclude that a reviewer, who had previously acted as trial counsel, would not be at least unconsciously influenced in some factors by reason of his previous connection with the case.

However honest his intentions, an inherent conflict arises between a reviewer's duty to dispassionately advise the convening authority on the appropriateness of the sentence, and the prosecutor's innate desire to press for a substantial sentence as an accolade for his efforts in securing the conviction. The influence of the earlier performance as trial counsel must necessarily color the conduct of the actor in his immediately succeeding role of advisor to the reviewing authority. The complex of facts elicited in the post-trial interview is sifted through the mind of the reviewer. An open, objective, and unbiased mind would more accurately evaluate the accused's personality and background, than would one which had had adversary dealings with the accused just a short time before. No hint of such influence might be discernible in the bare pages of the record, but colorings of partiality would unquestionably affect the review.

The accused's best chance for sentence reduction, within the courts-martial processes, comes in the initial review. It is only at that level of the appellate procedure, that he can project his traits of character and his attitudes in a personal interview. Consequently, it is of the utmost importance to him that the review, upon which the convening authority will base his action on the

660

sentence, be free of any possible suggestion of personal partiality or bias on the part of the reviewer. A review, prepared by the individual who acted as trial counsel, cannot reasonably be said to be fair and impartial.

Although we base our decision upon the doctrine of general prejudice, the circumstances of this case also support a finding of specific prejudice. The Acting Assistant Staff Judge Advocate, who had had no active connection with the case previously, prepared a full, complete, and commendable report on the accused's personality and background. He included in the report the comments of the Prison Chaplain, the Police and Prison Officer, and the First Sergeant of accused's organization. Some of these comments were favorable to accused; others were not. But, after evaluating all of the factors, the Acting Assistant concluded that "a period of retraining would be beneficial to the accused and could result in his becoming eligible and desirous of continuing a career in the Air Force." Accordingly, he recommended that the punitive discharge be suspended and that accused be sent to the Retraining Center in Amarillo, Texas. The Staff Judge Advocate, who had acted as trial counsel in the case, rejected the recommendation. He argued that approval and execution of the discharge was actually mandatory. It is significant that in his own report, the former trial counsel emphasized the four previous convictions of the accused, which in his opinion made it apparent that the accused was "nothing but a liability to the Air Force" and a "worthless individual." Such emphasis on previous convictions is indicative of a prosecution complex.

Undoubtedly the Staff Judge Advocate was entirely honest in his opinion as to the worthlessness of the accused. And, it may be true that the accused is undeserving of any further consideration. But, he is entitled to have the appropriateness of his sentence determined in an atmosphere free from any prior adversary attitude toward him. Manifestly, more than "a fair risk of material prejudice" to the accused resulted from the combination of functions in this

case. United States v. Bound, 1 USCMA 224, 2 CMR 130. Having received a favorable recommendation from the immediate post-trial interviewer, it would not be unreasonable to expect that a Staff Judge Advocate who had no personal interest in the trial proceedings would concur in that recommendation and submit it to the convening authority for consideration. The personal interest of the Staff Judge Advocate in this case, arising out of his previous functioning as trial counsel, might well have influenced his decision to reject the recommendation. The conclusion that the error prejudiced a substantial right of the accused is inescapable.

The decision of the board of review is reversed. A rehearing is ordered.

BROSMAN, Judge (concurring):

I concur in the opinion of the Chief Judge. This memorandum is prepared not because I feel that his opinion does not rest safely and comfortably on its own bottom, but rather because some aspects of the dissenting opinion disturb and confuse me.

## II

The dissenting judge has freely conceded that "if the convening authority in this case had required that trial counsel act as his staff judge advocate to review the record, within the meaning of that Article [Article 6(c) of the Code], *then there would be prejudicial error.*" (Emphasis supplied.) How —I must inquire—does he know that a "review" was not "required" by the convening authority? It is indeed true that the Uniform Code does not "require" that a convening authority refer records of trial by special court-martial to "his staff judge advocate or legal officer . . . for his written opinion thereon." The reason for this is not far to seek— and is soundly based in practical considerations. Very many officers who exercise special—but not general—court-martial jurisdiction command units which are simply too small to enjoy the luxury of such a functionary. Yet the staffs of many other such convening authorities do include a "staff judge advocate or legal officer." And when he is

to be found, he functions as such, and frequently, if not usually, "reviews" records of trial by special court-martial. By local ground rules he may even be "required" to do so. And why not? After all, that is what he is there for— that is, to advise his "client" concerning legal matters. It does not seem to follow, therefore, that, merely because a procedure is not required by the Code or Manual, that it is not required at all.

But I find real difficulty in understanding why we should be troubled about the question of *requirement.* Lieutenant Jungman in the instant case was, in fact and in law, the staff judge advocate to the convening authority. He certified that he occupied this position—and under Air Force practice, the senior legal officer in any command is appropriately designated as the staff judge advocate of that command. Of what moment then is the question of whether the Lieutenant was "required" to do what he did in this case? He did it in fact, and he did it as staff judge advocate. Moreover, he had served as trial counsel when the accused was tried. I am sure, therefore, that he had fully accomplished whatever harm was envisioned by the draftsmen of the Code and Manual.

## III

The dissenting judge does not believe that Lieutenant Jungman effected a "review" in this case. What is a review? Is a review not a review because a staff judge advocate does not do all that he might have done? Judge Latimer has indicated that he conceives of the review contemplated by the Code as a procedure which is concerned primarily with the consideration of possible "legal errors or irregularities." This assumption— for it is no more than this—seems to me to be wholly gratuitous, for fully one-half of the contents of the typical field review relate to nothing other than appropriateness of sentence and clemency considerations. The Manual demands not only that the staff judge advocate comment on errors and irregularities, but requires as well that he provide "specific recommendation as to the action to be taken." Paragraph 85b. Moreover, the conclusion is inescapable

that the same source has sought to place a substantial amount of pressure on the convening authority to accept the recommendation of his staff judge advocate as to "the action to be taken." Paragraph 85c. Thus, it appears that the Manual and the author of the dissenting opinion are in overt discord over the question of whether a staff judge advocate lays down his reviewer's pen when he recommends concerning a sentence in terms other than those of legality or the reverse.

Let us concede for the sake of argument, however, that the "primary" concern of a field review *is* the discovery of legal error. Does it follow that this function is the *only* one exercised by the staff judge advocate with respect to a record of trial? Of course it does not. It strikes me that in this case the staff judge advocate simply performed one of the other functions of his office in this setting—and one which is certainly of considerable importance to the accused concerned.

But why are we at all preoccupied with the nature of a field review, or with whether the staff judge advocate here "reviewed" the record of accused's trial? Article 6(c) of the Code—the provision of special concern to the dissenting judge—says nothing whatever about the drafting of a review. Indeed, it does not even make use of the term. Instead, it merely announces that, if one has served as trial counsel in a court-martial proceeding, then he may not thereafter "act as a staff judge advocate . . . upon the same case." May not a staff judge advocate act as such with respect to a record of trial other than as a reviewer? I feel sure that he may.

## IV

It has also been suggested that the action of the acting assistant staff judge advocate here, and that of his superior, the staff judge advocate, were concerned wholly with clemency. But how can this be known? Why am I not able to assert with equal assurance that both of these officers firmly believed that they were acting solely with respect to appropriateness of sentence? I do not do this, of course—and for the reason that I cannot be sure. And one who is certain in these premises must indeed possess a clearer idea than I of the practical distinction between a recommendation of clemency and one as to appropriateness of sentence. There is undeniably a clear theoretical distinction between the power to grant clemency and the power to determine appropriateness. However, in a situation in which both authorities reside in the same functionary, it is a little difficult for me to be sure of which is being exercised. And I labor under the same dubiety as to the run-of-the-mine recommendation of a staff judge advocate in this area.

## V

I suspect that my real difficulty with Judge Latimer's approach is that it seems baldly to ignore the significant role of the staff judge advocate—indeed of the lawyer—under the Code and Manual. It must be granted, of course, that most of the language of these two sources, in treating of the matter at hand, relates to the staff judge advocate of a general court-martial convening authority. This is so for the plain reason, adverted to earlier, that many— if not most—special court-martial convening authorities do not command the services of a legal officer. However, there is nothing of which I am aware in either the Code or Manual which—expressly or impliedly—excludes from their general provisions the staff judge advocate serving a special court-martial convening authority who does not at the same time exercise general court-martial jurisdiction.

It seems safe to say that the Air Force—perhaps to a somewhat greater extent than any other Armed Service— has been able to supply professional legal advisors to the staffs of officers exercising only special court-martial jurisdiction. When they are present, such officers are generally treated no differently from those performing similar functions in higher headquarters, and by regulation are characterized as staff judge advocates. AFR 21–3, paragraph 4c, as amended, May 28, 1952. When such a convening authority is furnished with a professional advisor, it strikes me as absurd—as well as unfortunate in many respects—to regard the latter as

functionally different from, and distinctly inferior to, his exact counterpart in a more elevated echelon. Especially does this seem true when he has in fact acted in his official capacity—indeed has acted with respect to sentence appropriateness or clemency, matters peculiarly within the ambit of the knowledge and judgment of personnel of the convening authority's command.

We are repeatedly told that a principal weakness of the current, but no longer new, system of military justice is to be found in its administration at the special court-martial level—this almost wholly because of the lay composition of the tribunal involved, and the absence of professional legal supervision in most instances. In the present case, however, the convening authority had been furnished with a legal staff, which should have, and had in fact, performed as such. Yet it is suggested that we should accord its members, and Lieutenant Jungman in particular, an inferior—even a trifling position. Such a view, it seems to me, simply sells the military lawyer short, and—to boot—violates the clear intendment gatherable from all four corners of the Code and Manual.

VI

Of course, Judge Latimer is correct in suggesting that a special court-martial convening authority is not "limited in the sources from which he may obtain information [and advice] upon which to form an opinion as to the appropriateness of a particular sentence." Neither, so far as I am informed, is an officer who exercises general court-martial jurisdiction. Either, I would say, is entirely free to consult, say, a member of his medical staff, the president of the court-martial which returned the findings of guilty, or "a guy named Joe." Thus, I would in no way consider the trial counsel, himself, disqualified for this purpose. However, when the latter does express his point of view, I believe that he should make it entirely clear that he is doing so *qua* trial counsel, with all of the possible partisanship and zeal of advocacy not improperly inherent in that capacity— rather than as a staff judge advocate,

safely cloaked in the sanctity of detachment imparted by the Code and Manual to that role.

But all of this seems quite beside the point. The Uniform Code provides clearly and simply that "no person who has acted as . . . trial counsel . . . in any case shall subsequently act as a staff judge advocate . . . upon the same case." Admittedly, Lieutenant Jungman had acted as trial counsel in the case at bar. Subsequently—and within the very terms of Air Force directives—he acted as "a staff judge advocate . . . upon the same case." This must end the matter so far as I am concerned—for I cannot torture the language of Article 6(c) into meaning other than that which it plainly says.

LATIMER, Judge (dissenting):

I dissent.

This decision unnecessarily restricts the right of the convening authority to use available staff officers to assist him in gathering information touching solely on matters of clemency. I find nothing in our holding in United States v. Gordon, 1 USCMA 255, 2 CMR 161, which requires that we place our stamp of disapproval on the method employed in this instance. As reported in today's opinion, we stated the following rule in that case:

> "Again, the right to an impartial review is an important right which must be recognized in the military judicial system and an accused is entitled to have the record reviewed and the limits of his sentence fixed by one who is free from any connection with the controversy."

That language from the *Gordon* case was directed toward a convening authority who should, of course, have an open mind on the guilt or innocence of the accused and who should be unbiased as to the true measure of punishment. That rule, however, was not intended to circumscribe him in collecting information necessary to enable him to make an intelligent appraisal of rehabilitation possibilities. He is required to consider the record and affirm the findings and such part of the sentence as he believes to be fair and just,

**663**

and the most satisfactory way to determine the appropriateness of a sentence is by a thorough post-trial investigation. For that purpose, the convening authority should not be limited to the record nor should he be hedged in by technical rules of procedure. On the contrary he should be permitted to pursue all reasonable avenues of information. I suppose that up to this point there is no important disagreement between my associates and myself. The breach appears to open when we consider the personnel who may furnish the information.

Article 6 of the Uniform Code of Military Justice provides as follows:

"(c) No person who has acted as member, law officer, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, or investigating officer in any case shall subsequently act as a staff judge advocate or legal officer to any reviewing authority upon the same case."

Obviously, if the convening authority in this case had required that trial counsel act as his staff judge advocate to review the record, within the meaning of that Article, then there would be prejudicial error. I, however, do not find that any disqualified officer acted in that capacity. It must be borne in mind that the Code does not require that the convening authority of a special court-martial submit a record of trial to a staff judge advocate or to a staff legal officer. He may act with, or without, the benefit of legal advice. Article 60 of the Code, 50 USC § 647, provides as follows:

"After every trial by court-martial the record shall be forwarded to the convening authority, and action thereon may be taken by the officer who convened the court, an officer commanding for the time being, a successor in command, or by any officer exercising general court-martial jurisdiction."

Article 65(b), 50 USC § 652, supplements that provision by providing:

"Where the sentence of a special court-martial as approved by the convening authority includes a bad-conduct discharge, whether or not suspended, the record shall be forwarded to the officer exercising general court-martial jurisdiction over the command to be reviewed in the same manner as a record of trial by general court-martial or directly to the appropriate Judge Advocate General to be reviewed by a board of review. If the sentence as approved by an officer exercising general court-martial jurisdiction includes a bad-conduct discharge, whether or not suspended, the record shall be forwarded to the appropriate Judge Advocate General to be reviewed by a board of review."

The duty to have the record reviewed by a staff judge advocate, when a special court-martial imposes a punitive discharge as part of a sentence, was placed primarily on the back of the officer exercising general court-martial jurisdiction and not on the back of the convening authority. From the terms of the Articles it would appear Congress intended that the review of the record by a staff judge advocate be made by a headquarters which normally has that officer assigned to it. Lower headquarters are permitted to rely on the officer exercising general court-martial jurisdiction to have the record reviewed by legally competent personnel. In this instance, the review was made by the appropriate officer on the staff of the officer exercising general court-martial jurisdiction and he was in no manner disqualified by statute or otherwise.

It is my belief that the review contemplated by Article 6, supra, deals primarily with a review of the record to determine if it is free from legal errors or irregularities. The only way in which the sentence would be involved in the review is when, and if, it is illegal as a matter of law. If it is not illegal, its appropriateness must be determined by the commander, not by the staff officer. Subparagraphs 85b and c of the Manual for Courts-Martial, United States, 1951, provide as follows:

"The staff judge advocate or legal officer to whom a record of trial is referred for review and advice will submit a written review thereof to the convening authority. The review

will include a summary of the evidence in the case, his opinion as to the adequacy and weight of the evidence and the effect of any error or irregularity respecting the proceedings, and a specific recommendation as to the action to be taken. Reasons for both the opinion and the recommendation will be stated. The convening authority may direct his staff judge advocate or legal officer to make a more comprehensive written review or supplementary oral or written reviews or reports.

. . . . . .

"Ordinarily, the convening authority should accept the opinion of his staff judge advocate or legal officer as to the effect of any error or irregularity respecting the proceedings, as to the adequacy of the evidence, and as to what sentence can legally be approved. However, it is within the particular province of the convening authority to weigh evidence, judge the credibility of witnesses, determine controverted questions of fact that may have been raised in the record, and to determine what legal sentence should be approved."

A cursory inspection of the exhibits in the record establishes, without contradiction, that neither of the two officers involved in the post-trial investigations reviewed the record within the fair intendment of those subsections of the Manual. Lieutenant Sperline, who, in his communication identified as "Post-Trial Clemency Interview," designates himself as "Asst Staff Judge Advocate (acting)," conducted a detailed and exhaustive post-trial clemency interview. When the court-martial was originally ordered to convene, he was designated as assistant defense counsel. He had been relieved prior to trial and so he was not disqualified to inquire into the legal errors in the record. However, he did not do so. His entire efforts were channeled in aid of sentence. The contents of his report go solely to the question of whether clemency, in the form of a suspension of the bad-conduct discharge, should be exercised. The subjects he reported on consist of the accused's family life, his intelligence, his employment record, his pattern of behavior, his early life difficulties, his complexes, and his previous convictions. That officer ended with a recommendation that the accused be given one more chance to make good in the service by suspending execution of the bad-conduct discharge. Lieutenant Jungman, who signed an uncaptioned report, designated himself as "Staff Judge Advocate." The record does not indicate the staff assignment of either officer; nevertheless, I am assuming that they were assigned to the staff of the convening authority. Lieutenant Jungman went no further than to note disapproval of the recommendation for clemency made by the officer who conducted the post trial interview and in support of his position stated that the accused had been convicted of four offenses during the twelve months immediately preceding the time of this offense, and that the record of the accused was such that the bad-conduct discharge should not be suspended. The base for that statement is found in the record of previous convictions introduced in evidence, and, it was before the convening authority for his consideration independent of the statement. The information in the exhibit of previous convictions was more damning than that contained in the communication from Lieutenant Jungman as the nature of the previous offenses was shown in the former and not in the latter. It is of interest to note that three out of the four convictions involved assaults and disrespectful conduct toward superior noncommissioned officers.

The convening authority was not required to submit the record of trial to his legal counsel and he certainly did not do so for legal purposes. As previously developed, I must assume that he requested information as to matters of clemency from legal members of his own staff. The issue thus narrows to the single question of whether a convening authority, who need not obtain legal advice on a record of trial, is limited in the sources from which he may obtain information upon which to form an opinion as to the appropriateness of a particular sentence. I know of no reason why the convening authority should not be permitted to obtain information

from all reliable sources. If Article 6 (c), supra, is to be interpreted as suggested in the prevailing opinion, then a member of the court, the law officer, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, and investigating officer are precluded from making clemency recommendations either for or against an accused in a case in which they participated. I am certain it has been standard practice in the military for many years for members of courts to express to convening authorities that they give consideration to reducing sentences or to exercising some form of clemency or commutations. While I believe court members should fix the length of the sentence and not rely on the convening authority to reduce, I know of no good reason why it is improper for them to recommend that he take action which cannot be taken by the court-martial. Neither do I find any good reason to deny others who are familiar with a case from submitting their views. By way of illustration, an investigating officer, a defense counsel, or a court member may be in a situation where they can be of inestimable value in helping to determine a fair and just sentence. In some instances they may be favorable to the accused. In others, their help may result in a showing adverse to him. But in either event, they should not be rendered deaf, dumb, and mute because they are familiar with the litigation. After all, the purpose of a convening authority should be to determine the man's value to the service, his rehabilitation possibilities, and other factors which influence punishment.

While the accused failed to benefit from the post-trial investigation, if the so-called doctrine of general prejudice is to be applied in this situation, I am wondering what the decision might be if one of the members disqualified to act as a staff judge advocate was to write a letter recommending leniency. I suppose in that situation, as here, the accused would be granted a new trial to re-litigate his guilt or innocence about which there is no dispute. Again I dissent from a result which grants an accused a new trial when by every known standard he is entitled, at the best, to no more than a reconsideration of the sentence.