UNITED STATES, Appellee

v

PETER L. DODGE, Chief Warrant Officer,
U. S. Air Force, Appellant

13 USCMA 525, 33 CMR 57

No. 16,179

March 15, 1963

*Colonel Daniel E. Henderson, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph E. Krysakowski.*

*Captain Donald W. Brewer* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Emanuel Lewis* and *Lieutenant Colonel Simpson M. Woolf.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial at Tyndall Air Force Base, Florida, convicted the accused of an act of sodomy with an airman, and sentenced him to a dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for two years. The convening authority approved the findings of guilty, but modified the sentence by eliminating the confinement and reducing the forfeitures to $150.00 per month for six months. A board of review affirmed the conviction, and the accused brought the case to this Court on three assignments of error.

Two of the assignments of error concern the qualification of the staff judge advocate, Lieutenant Colonel Morrie Benson, to submit the pretrial advice and to act on the post-trial review.

The accused contends that Colonel Benson was disqualified to act on those occasions because he previously acted as an investigator and "for the prosecution." Although it appears that nearly all the material circumstances upon which the assignments are predicated were known to defense counsel before trial, the question of disqualification was not raised until the case came before the board of review. As a result, the Government insists that even if Colonel Benson's participation in these proceedings was objectionable, the failure to ask for appropriate relief before trial is a waiver of any impropriety in the pretrial advice. See United States v Mickel, 9 USCMA 324, 26 CMR 104; United States v Heaney, 9 USCMA 6, 25 CMR 268. And, similarly, the Government argues, the

accused's failure to move before the convening authority to disqualify Colonel Benson from acting in connection with the post-trial review is a waiver of any possible objection to his qualification to proceed therein. See United States v Wolfe, 8 USCMA 247, 24 CMR 57. There is much to be said for the Government's claim of waiver, but whether disposition of the assignments of error upon this ground is required by our cases need not detain us. We are satisfied that the allegations of disqualification are not supported by the facts.

Article 6(c), Uniform Code of Military Justice, 10 USC § 806, provides, in part, that one who acts as investigating officer shall not "later act as a staff judge advocate . . . to any reviewing authority upon the same case.[1]" Colonel Benson, says the accused, was disqualified to act on the pretrial advice because he was previously "a *de facto* investigating officer." The contention is based upon seventeen long-distance telephone calls between Colonel Benson, Major G. M. Gentry, and others of Colonel Benson's office, at the Florida end; and at the other end, prospective prosecution witnesses, some of whom had previously submitted a statement to agents of the Office of Special Investigations, and other military personnel in Philadelphia, where the principal witness resided.

The details of various conversations are not specifically spelled out. However, appellate defense counsel concede that calls to the witness to the particular offense charged in this case, who had been separated from the service and was then a civilian, were to ascertain if, in the witness' own words, "I would be willing to appear" at the accused's trial and "relate the facts that I know regarding the case." The witness said he would. Thereafter, Office of Special Investigations agents in

Philadelphia communicated with him and obtained a second statement. They informed him that Colonel Benson had pointed out to them that the previous statement gave the date of the offense as "the summer of 1959," and that Colonel Benson "wondered if . . . [the witness] could possibly remember the exact date it happened." Although the witness was not told the reason for the need for specification, the record clearly shows, and the accused concedes, that the time of the offense given in the witness' first statement raised the possibility that the statute of limitations might have run against the offense.

Neither the request for clarification of the date of the offense, nor direct inquiry of the witness as to his availability, transformed Colonel Benson from a staff judge advocate into an investigator or "prosecution mentor." A staff judge advocate is not obliged to "sit idly by when he perceives a deficiency" in the record that reaches him for official consideration. United States v DeAngelis, 3 USCMA 298, 12 CMR 54. He may request or direct that additional facts be obtained. In the present case, Colonel Benson might have been subject to censure if he had recommended trial on the charge and it later turned out that the statute of limitations had already run. He was similarly vulnerable if he permitted the matter to proceed in routine course, and it developed that the statute of limitations ran out before completion of the processing. Manifestly, he was bound to take some action to clarify the uncertainty raised by the prospective witness' statement.

The accused's own argument impliedly concedes that a "single demand upon the resident OSI official at Tyndall Air Force Base," would not have disqualified Colonel Benson from participation in the pretrial advice.[2] But, the right

---

[1] While Article 6(c), Uniform Code of Military Justice, 10 USC § 806, refers to "reviewing authority," the term is generally used interchangeably with the term "convening authority." Manual for Courts-Martial, United States, 1951, paragraph 84. See Legal and Legislative Basis, Manual for Courts-

Martial, United States, 1951, page 121. We assume, therefore, for present purposes that the Article prohibits an investigator from subsequently acting as staff judge advocate for the pretrial advice.

[2] From the record, it would appear that, in fact, Colonel Benson submitted

to request information cannot be limited to a single request. If the initial act is proper, the number of requests, demands, or inquiries made to determine whether the information sought is available, and when it can be expected, is unimportant. It is especially unimportant, if, as here, time is of the essence. The character of a request or demand is determined by its content and purpose, not the number of times the request or demand is repeated. In United States v Erb, 12 USCMA 524, 31 CMR 110, we rejected a defense claim that trial counsel was disqualified because, as chief of military justice of the command, he had previously requested additional information on the accused's sanity, and had also inquired about the availability of a witness. Our ruling in the *Erb* case is decisive, and it provides an adverse answer to the accused's attack on Colonel Benson's qualification to act on the pretrial advice.[3]

". . . The purpose of the prohibition against dual function in the same case is 'to preclude situations which impair or destroy the fairness and impartiality of the proceedings against the accused.' United States v Hightower, 5 USCMA 385, 18 CMR 9. Major Marsh was not the staff judge advocate. He did not fall, therefore, within the express prohibition of Article 6. His eligibility to serve in the two capacities must be judged by the test of incompatability between his functions as trial counsel and his actions as chief of military justice. United States v Hayes, 7 USCMA 477, 22 CMR 267; United States v Hurt, supra.

"Elaborate discussion is not needed to establish compatability between the impartiality of a request for additional facts for use in a later medical evaluation of the accused and later action as trial counsel; similarly, compatability is equally evident in the request as chief of military justice, for information regarding the availability of witnesses." [United States v Erb, 12 USCMA 524, 532, 31 CMR 110.]

A substantial part of the contention that Colonel Benson was disqualified from acting on the post-trial review is based upon the same grounds discussed in connection with the pretrial advice. Since those grounds are insufficient to show ineligibility as to the pretrial advice, they are equally insufficient to disqualify him as to the post-trial review. However, one additional circumstance of alleged disqualification is said to exist.

A few days before he acted on the case, the convening authority wrote to the United States Air Force Director of Special Investigations. See footnote 2. He expressed his appreciation for the "speedy and effective" assistance he received in the case from a number of members of the Office of Special Investigations, whom he named. Considering the implications of this letter, the board of review below noted that there was no direct evidence to connect Colonel Benson with it. However, it assumed that communications of that kind are "ordinarily" prepared by the staff

---

the initial request to the local Office of Special Investigations, and was moved later to communicate directly with the Philadelphia office and prospective witnesses because of the need for speedy action. Thus, in a letter to the Director of Special Investigations, written after the trial, the convening authority noted that "time was of the essence" in determining whether or not the statute of limitations applied to the offense charged.

[3] The record of trial supports the inference, which the accused accepts, that Colonel Benson talked to other prospective witnesses and military personnel for the same reason he talked to the principal witness in this case. In any event, the record shows each person was a witness to a different offense. These other offenses were not brought to trial; and none of the witnesses appeared against the accused at this trial. In the absence of other evidence that Colonel Benson's activities reasonably tended to prejudice him against the accused, there is no basis whatever to disqualify him in this case because of his actions in connection with different unprosecuted charges. Cf. United States v Gardner, 9 USCMA 48, 50, 25 CMR 310.

judge advocate for the commander's signature. The board of review reasoned that such letters of appreciation are "customary in the service," and that the one in issue contains nothing to indicate a predisposition on the part of Colonel Benson to act adversely to the accused in preparation of the post-trial review. We reach the same conclusion.

It distorts the meaning of the plain language of the letter to intimate, as does the accused, that since ▮ the letter antedates the convening authority's action it could have "imbued . . . [him] with the . . . [idea] that the main object of these proceedings was to convict . . . [the accused] before he could 'beat' the statute of limitations." The letter is completely silent about the merits of the case. It refers only to the fact that a court-martial found the accused guilty of "an offense that was alleged to have occurred in 1959" and which, except for the assistance of the named members of the Office of Special Investigations, "could not have been tried" within the time limited by law, because all the prospective witnesses had "departed the Service" and "their location[s] . . . [were] unknown." We may assume that the suggestion for sending the letter originated with Colonel Benson. We may also assume that the letter is an indirect compliment to him for his alertness in detecting the need for further information. Such circumstances are not incompatible with the requirements of an impartial review. The statute of limitations was not in issue. There is nothing in the case that could discredit Colonel Benson or be "an accolade for his [earlier] efforts," if the review went for or against the accused. United States v Coulter, 3 USCMA 657, 660, 14 CMR 75. Authorship of the letter, therefore, did not disqualify Colonel Benson from participating in the post-trial review.

The accused's final assignment of error concerns an instruction in which the law officer advised the ▮ court-martial that if it adjudged punitive separation from the service it must be only by a dishonorable discharge. In United States v Briscoe, 13 USCMA 510, 33 CMR 42, we considered the question, and sustained the instruction as correct.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

In view of the action of the Court in United States v Mallicote, 13 USCMA 374, 32 CMR 374, in which the preparation of a thorough, detailed trial brief was held not to constitute the author staff judge advocate a member of the prosecution, I am not surprised to find that it holds Lieutenant Colonel Benson's actions in this case did not make him an investigating officer, who was thereafter disqualified to act as staff judge advocate to the convening authority. I record my disagreement with this conclusion as, on principle, I find little reason to distinguish between a legal officer who prepares the brief for the actual trial of the case and one who, prior to the preference of charges, conducts a supplementary police-type investigation in order to establish relevant and material facts concerning accused's guilt and who, after his judgment is vindicated by the verdict of the court-martial, drafts a letter of appreciation in which it is declared the case "could not have been tried within the Statute of Limitations without the splendid assistance of your [police] Directorate."

As the principal opinion notes, the staff judge advocate entered this case prior to the preference of charges and initiated a supplementary investigation to determine the exact date of the offense which the accused allegedly committed and the availability of the witnesses against him. Two days later, charges were preferred, an investigation under the provisions of Uniform Code of Military Justice, Article 32, 10 USC § 832, ensued, and, based in part upon the information which he had caused to be gathered, Lieutenant Colonel Benson prepared the pretrial advice. Following the trial, he presumably prepared the letter of appreciation to which reference is made above and, having

**529**

thus expressed himself upon the merits of the police assistance afforded him in investigating the case, supervised preparation of the post-trial review.

In enacting the Uniform Code of Military Justice, the Congress went to great lengths to insure that an accused would receive impartial consideration of his case during both the pretrial and post-trial stages. Thus, it specifically prohibited one who "has acted as member, law officer, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, or investigating officer in any case" from acting later "as a staff judge advocate or legal officer to any reviewing authority upon the same case." Code, supra, Article 6, 10 USC § 806. The purpose of this statutory prohibition, declared the Armed Services Committee, was "to secure review by an impartial staff judge advocate or legal officer." Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 898, 901; House Report No. 491, 81st Congress, 1st Session, page 13. See also United States v Coulter, 3 USCMA 657, 659, 14 CMR 75, 77, and United States v Clisson, 5 USCMA 277, 280, 17 CMR 277, 280.

The exact concept envisioned by the Congress was most succinctly stated by this Court in United States v Renton, 8 USCMA 697, 25 CMR 201, at page 701, when it noted:

". . . Human nature being what it is, the very fact of being called upon to condemn or countenance one's own workmanship cannot create a healthy outcome. . . ."

As in United States v Mallicote, supra, the result in this case demonstrates that the Court has made the legislative command of impartiality a dead letter. Here, the staff judge advocate, upon receiving a criminal investigation report, vigorously pursued a supplementary investigation into the availability of proof and the essential question of the date of the offense. Having made his case against the accused, the matter was allowed to proceed through the formality of preference of charges and conduct of a pretrial investigation which amounted to little more than a rehash of that which the investigators and staff judge advocate had already accomplished. He then prepared a pretrial advice in which, based in part on the information which he had uncovered, trial by general court-martial was recommended. And, after his judgment was vindicated by the findings of guilty, he wrote a letter for the convening authority's signature in which the police were lavishly complimented for the assistance which they had rendered him in a successful prosecution. After all this, he "impartially" reviews the case and, as the record is considerably his own product, not unsurprisingly finds that the findings of guilty are correct in law and fact. If this is the sort of military due process which Congress envisioned in passing Code, supra, Article 6, then I am badly mistaken.

We simply must face up to the facts in the administration of military law. Staff judge advocates act and behave in case after case as if they were attorneys for the United States, with their sole objective being the production of a legally sustainable conviction and adequate sentence. The record before us and that in *Mallicote,* supra, are prime examples of what I mean. The only way to force abandonment of this essentially lawless role in favor of that of the impartial legal advisor, which Congress sought to provide, is to require adherence to the statutory norm. Then and only then will the accused be furnished with the protections which have been legislatively afforded him and which experience in World War II and antecedent conflicts demonstrates that he sadly needs.

Nor is there any need for permitting the staff judge advocate to inject himself in the criminal proceedings directly as he did in this case. Here, the criminal investigation report offered an adequate basis for the preference of charges. Their receipt by the officer exercising summary court-martial jurisdiction would have served to stay the statute of limitations. Code, supra, Article 43, 10 USC § 843. Thereafter, the pretrial investigating officer could have collected the necessary information in a proceeding at which the accused would have been duly represented.

There would not have been one whit more delay involved, and the case would have proceeded in normal channels without the taint which attaches solely because an officer who should have known better decided to take upon himself the burden which the law has placed elsewhere.

I am not at all unsympathetic to military problems, but solution to them is not found in disregard of Congressional mandates. Indeed, if half the effort now employed in evading codal restrictions was directed toward its honest acceptance and use, the problems themselves would probably disappear. If they do not, the armed services should seek appropriate modifications from Congress. In the absence of any such action, I do not believe that we should offer the same sort of relief by treating the positive command of an Article of the Code as relatively unimportant or by liberally interpreting its terms in order to escape its prohibitions. To the contrary, these guards against arbitrary unfairness should be strictly enforced and, when applied to the factual situation here depicted, should lead to complete reversal.

As I am of the opinion, therefore, that the staff judge advocate in this case was disqualified to participate in either the pretrial advice or the post-trial review, I would reverse the board of review, set aside the findings and sentence, and order further proceedings under Code, supra, Article 34, 10 USC § 834, after which the convening authority would be empowered to order a rehearing on the charge and specification.