## UNITED STATES

v.

**Staff Sergeant Ernest E. BEARD, Jr., FR 242–68–9074 United States Air Force.**

### ACM 23470.

U. S. Air Force Court of Military Review.

Sentence Adjudged 19 Nov. 1981.

Decided 10 March 1983.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain John V. Sullivan.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Michael J. Hoover.

Before KASTL, RAICHLE and SNYDER Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

Staff Sergeant Beard was convicted by general court-martial of five drug-related offenses in violation of Article 134, U.C.M.J., 10 U.S.C. § 934. He was sentenced to confinement at hard labor for six months, forfeitures of $488.00 per month for six months, and reduction to airman first class.

This case is before us for review pursuant to Articles 66(c) and 69, U.C.M.J., 10 U.S.C. §§ 866(c) and 869. We will treat the certified issues *seriatim*. For reasons stated hereinafter in II, we set aside the findings of guilty and the sentence.

I

WHETHER LIEUTENANT COLONEL [S] WAS DISQUALIFIED FROM SERVING AS STAFF JUDGE ADVOCATE FOR THE SPECIAL COURT–MARTIAL CONVENING AUTHORITY IN THIS CASE BY HIS PRIOR PARTICIPATION AS THE ARTICLE 32 INVESTIGATING OFFICER.

Lieutenant Colonel S, a judge advocate stationed at Torrejon Air Base, Spain, served as investigating officer in this case pursuant to Article 32, U.C.M.J. He subsequently became staff judge advocate at Torrejon. The commander, Colonel G, exercises special court-martial jurisdiction. In late July 1981, Col G proposed court members for this case to the Commander, United States Air Forces in Europe (USAFE), the general court-martial convenor located in Germany. Also in July the USAFE commander referred the case for trial by general court-martial.

Three months later, after LtCol S had become staff judge advocate to Col G, the two discussed the continuing availability of court members; LtCol S recommended removing three members from the original panel and adding two new members. Availability was the sole criterion for changing the membership, according to LtCol S; he never discussed the merits of the case with Col G. To the contrary, LtCol

S testified that "I deliberately refrained from any discussion about the case because of prior involvement" as Article 32 investigator.

Ultimately, Col G recommended that the general court-martial convenor add these two new members and relieve the three others from the original convening order. An amending order was issued in November 1981 at USAFE.

## A

As a threshold matter, we note that appellate defense counsel have enlarged the certified question; citing Article 6(c) U.C. M.J., 10 U.S.C. § 806(c),[1] they now assert in their brief that LtCol S acted impermissibly as a staff judge advocate to both the *special* and *general* court-martial convening authorities. Expansion of this issue is apt, given the facts. We also choose to enlarge our discussion to address the roles of LtCol S *vis-a-vis* both general and special court-martial convenors. We find no prejudice and answer both the specific certified question and the expanded question in the negative.

## B

■ Addressing the expanded question, we find that LtCol S did not act as a staff judge advocate to the general court-martial convening authority.

This case was tried by general court-martial; its convening/reviewing authority was a general officer located at USAFE headquarters in Germany. In contrast, LtCol S was serving as staff judge advocate to the special court-martial jurisdiction in Spain. LtCol S was in no way a member of the USAFE court-martial convening authority's staff; neither did he serve as staff judge advocate to that convenor, who acts in the matter with advice from his own staff judge advocate. *See United States v. Erb,* 12 U.S.C.M.A. 524, 31 C.M.R. 110, 117–118 (1961); *United States v. Bohannon,* 20

1. Article 6(c), U.C.M.J. provides, in pertinent part that:

No person who has acted as . . . investigating officer in any case may later act as a staff

C.M.R. 870, 878 (A.F.B.R.1955); *United States v. Journell,* 18 C.M.R. 752, 760 (A.F. B.R.1955). Accordingly, we have no hesitation in finding that LtCol S was not acting as the staff judge advocate to the general court-martial convenor in this case.

## C

■ Turning to the precise certified question, we similarly find that LtCol S was not acting at this time, within the meaning of Article 6(c), U.C.M.J., as a staff judge advocate to Col G, the special court-martial convening authority. The operative Codal words are whether he "acted . . . as a staff judge advocate." At the time LtCol S assumed staff judge advocate duties, the case was already scheduled as a general court-martial. Thus, at this point the matter was out of the hands of Col G. LtCol S's follow-on activities were clerical, involving the administrative paperwork from which Col G recommended changes in court membership to the general court-martial convenor, who ultimately issued his amending order.

We are convinced that LtCol S did not act as staff judge advocate to Col G at this juncture; to the contrary, his actions were ministerial and without legal import. *See generally, United States v. Blake,* 21 C.M.R. 809, 815–816 (A.F.B.R.1956), and *United States v. Journell, supra,* at 760. Accordingly, we hold that LtCol S does not fall within the class of those whose dual functions—investigating officer and staff judge advocate—are expressly prohibited by Article 6(c) of the Code.

Absent an express *statutory* prohibition, LtCol S's activities will be judged by the test of incompatability between his alleged dual functions. *United States v. Erb, supra,* at 118. In this vein, the defense assertion of disqualification casts upon the Government at least the burden of going forward with proof to overcome that contention. *See United States v. Erb, supra,* at 118.

judge advocate or legal officer to any reviewing authority upon the same case.

We hold that the burden was met. Both Col G and LtCol S testified at trial. It is clear that the three prior members were excused for purely administrative reasons—one had a duty conflict; a second had departed the base for a new assignment; the third was dating the assistant trial counsel. M.C.M., 1969 (Rev.), para. 36c. It is also clear that Col G used biographical records to help him select the new names he provided to the general court-martial convenor. Thus, from the record, Col G obviously was mindful of the criteria under Article 25d(2), U.C.M.J., in the process of ultimately selecting the best qualified members for courts-martial. M.C.M., para. 36c. Moreover, there is no suggestion that LtCol S was other than evenhanded and fair in his activities concerning the case. He himself testified that he avoided discussing the merits with Col G. LtCol S had nothing to do with the original referral to trial or with a subsequent re-referral which occurred. As for any lingering spectre of partisanship, we note that LtCol S, as investigating officer, actually twice recommended that the case be tried by *special* court-martial. Finally, we note that no motion was raised at trial as to the alleged disqualifications of LtCol S.

In sum, then, we have carefully reviewed the testimony of record, particularly that of LtCol S and Col G. We see no possibility that the accused could have been prejudiced here. *See generally, United States v. Leo,* 17 C.M.R. 387, 390 (A.B.R.1954).[2]

In concluding that there is no prejudicial error here, we find apposite the remarks of the Court of Military Appeals that the perception of fairness in the military justice system is important, but as the Court said in *United States v. Hardin,* 7 M.J. 399, 404–405 (C.M.A.1979):

... the desire for perceiving that an act is just must be balanced against the remedy to provide that perception. When perception thwarts the justice system as

created by the Code, the system fails. When perception becomes the system, justice fails.

We have resolved the first certified and expanded questions factually. Thus, it is unnecessary to resolve the broader conceptual claim raised by the parties that whatever statutory authority exists as might disqualify LtCol S operates solely *after* trial. See Appendix A.

II

WHETHER THE ASSISTANT TRIAL COUNSEL PROPERLY RECOMMENDED SELECTION OF TWO NAMED OFFICERS AS COURT MEMBERS FOR THIS CASE.

Captain P, the assistant trial counsel, became chief of military justice at Torrejon while this case was being readied for trial. He did not participate in the initial recommendation of court members. Later, in his capacity as chief of military justice, Captain P proposed two new officers as potential court members and directed his noncommissioned officer in charge to both determine their availability and prepare biographical summaries on them.

The defense objected at trial to this matter and Captain P testified:

I can't say that I know Lieutenant Colonel V, [one of the new proposed members] well. But my initial impression of him was that he satisfied the requirements for Article 25. Furthermore, I was under the impression that he was available. And I directed my staff to find out if he was available and then to get a biography sheet.

MJ: Are you required to replace a Lieutenant Colonel with a Lieutenant Colonel? I mean, is that a matter of policy practice? Colonel [G] testified that he wants a spectrum of rank but ____. Well, how about Captain C, [the second

2. While we find no error here, we counsel sidestepping needless confrontation caused by the appearance of impropriety. See AFM 111–1, Military Justice Guide, para. 1–12, 2 July 1973, Change 2, (8 October 1976). The rules of law in this area are easily learned with diligence; to use the rules with wisdom is a higher form of accomplishment. *See generally, United States v. Green,* 5 U.S.C.M.A. 610, 18 C.M.R. 234, 241 (1955).

new proposed member]; how did his name come up?

ATC: The same way as the Lieutenant Colonel.

MJ: Do you know him?

ATC: I know him when I see him and we've talked a few times. We're not friends by any means.

As for excusing the three old members, Captain P and LtCol S both related that P had been involved. The testimony of Col G clearly confirmed this:

[DC]: ... Did you rely on Captain [P's] recommendations and is that a part of your decision making in seeking to relieve these persons from the general court-martial.

A: Yes, that was definitely a part of it.

Finally, LtCol S testified as follows:

[DC]: And you spoke with Captain [P] regarding the names of those persons who had originally been designated by the [general court-martial] convening authority is that correct?

A: Yes, we went over to determine their availability for trial to see if their status had changed which would render them unavailable for any reason.

Q: Now was anybody else present in your discussion with Captain [P]?

A: I don't recall, sir.

Q: And you discussed three names—did you not?

A: Well, we discussed everyone on the list to see if they were still available. But we came up with the three persons that we felt that should be removed after looking at the list. . . .

The record thus shows that the two new names were added and the three old names removed from these ultimately detailed by the general court-martial convening authority to the accused's court-martial. The message forwarding the recommendation to the general court-martial convenor at USAFE shows Captain P as releaser of the message.

■ We find that the actions of the assistant trial counsel in making recommendations as to court membership constituted reversible error, and we answer this certified question in the negative.

Recently, the Court of Military Appeals spoke to this matter. Although the case before them turned on another point, the Court commented in *United States v. Cherry,* 14 M.J. 251, 252–253 (C.M.A.1982) that:

Without ruling that it was reversible error at this time, we cast a jaundiced eye on the procedures purportedly used in the present case for selection of members to sit on the jury at this court-martial and for replacement of any court member who was excused. *See United States v. Aho,* 8 M.J. 236 (C.M.A.1980). We agree with Senior Judge Jones, concurring in *United States v. Crumb,* 10 M.J. 520, 527 (A.C.M.R.1980).

Senior Judge Jones' concurrence in *Crumb* —in which the remaining two Army judges agreed with his "salutary observations about those issues" [3]—cautioned that involving trial counsel in the culling process and replacement scheme for selecting court members should cease:

The authorities needlessly injected an appearance of evil into the procedure that should have been avoided. There is no place for the use of partisan government advocates in the sensitive area of selection of court members. The practice should be terminated forthwith. It is only through the searching examination at trial of two of the participants in the procedure that I am satisfied that the selection process was fair and without prejudice to the appellant.

*United States v. Crumb, supra,* at 527–528.

In the present case, Captain P's actions went beyond the purely administrative. He winnowed specific names and then recommended such changes to membership of the panel; Captain P's preferences were actually implemented by the USAFE convening authority. Accordingly, we hold that Captain P's active participation in that process was error. *United States v. Cook,* 18 C.M.R. 715, 717 (A.F.B.R.1955) (excellent

3. *United States v. Crumb,* 10 M.J. 520, 526, n. 10 (A.C.M.R.1980).

citation of Federal and state cases); *see also United States v. Sax,* 19 C.M.R. 826, 836–838 (A.F.B.R.1955).[4]

We do not question the personal integrity of Captain P. However, like our predecessor in *Cook,* we cannot escape the conclusion that a trial counsel cannot act in any capacity in nominating court members; his role as an advocate prevented his exercising that degree of impartiality required by the Code in selecting court members. In sum, to permit the assistant trial counsel under a cloak of impartiality as chief of military justice to help handpick members is to disregard the standards of fairness and non-partisanship mandated by Congress. *United States v. Cook, supra,* at 719. Needless to say, such action constitutes prejudicial error. *United States v. Cook, supra,* at 719; *United States v. Sax, supra,* at 837.

In arriving at our determination, we have considered the fact that the recommendations of Captain P were attenuated—that they funnelled through LtCol S, the staff judge advocate, and were forwarded to ·USAFE from the special court level by Col G; the USAFE general court-martial convenor ultimately detailed the members. Notwithstanding all this, we reject the notion that error is somehow dissolved because it was disseminated from Spain to Germany. Similarly, we reject the argument that the aura of impartiality normally surrounding a convening authority can finesse this matter. *United States v. Cook, supra,* at 720; *United States v. Sax, supra,* at 838.

### III

WHETHER THE ACCUSED WAS PREJUDICED BY THE GOVERNMENT'S FAILURE TO PROVIDE EITHER HIM OR HIS CIVILIAN DEFENSE COUNSEL WITH COPIES OF THE RECORD OF TRIAL.

■ After trial, a copy of the Staff Judge Advocate's Review, unaccompanied

by the record of trial, was dispatched to the civilian defense counsel. He made his *Goode* response, noting that he was accomplishing this "without benefit of the record of trial not yet submitted." The addendum to the Staff Judge Advocate's Review is silent in regard to this defense statement.

Allied papers attached to the record indicate there is no transmittal letter or receipt available to indicate that the civilian defense counsel ever received a copy of the record of trial. The accused claims this amounted to reversible error.

We find error, and answer the certified question positively.

Article 54(c), U.C.M.J., 10 U.S.C. § 854(c), succinctly states:

A copy of the record of the proceedings of each general and special court-martial shall be given to the accused as soon as it is authenticated.

Here, the accused and his counsel never obtained a copy of the record of trial for preparation of their *Goode* response. *U.S. v. Cruz-Rijos,* 1 M.J. 429 (C.M.A.1976). *See also United States v. Robinson,* 11 C.M.R. 218, 224 (C.M.A.1981). We believe the case is at once distinguishable from those where at least one copy of the record was available to the accused or the defense team. *See, for example, United States v. Babcock,* 14 C.M.R. 34, 36 (C.M.A.1982) (accused had transcript, government need not serve copies on all defense counsel in the case); *United States v. Dillon,* 3 M.J. 504 (A.F.C.M.R. 1977) (counsel had record, not accused—not fatal); *United States v. Coldiron,* 9 M.J. 900 (A.F.C.M.R.1980) (accused got copy of record of trial as soon as authenticated—no error).

For this failure, the usual remedy is a new review and convening authority action. In view of our disposition of the certified question in II above, however, the issue becomes moot.

---

4. Since the record is summarized, we lack even the "searching examination at trial" of the new members on voir dire which convinced Judge Jones in *Crumb, supra,* that the selection process there was fair.

For a parallel case in which no objection was made at trial by defense counsel, see *United States v. Trakowski,* 10 M.J. 792 (A.F.C.M.R. 1981), *pet. denied,* 11 M.J. 338 (C.M.A.) (investigating officer later acted as trial counsel).

## IV

Also in view of our disposition of the second certified question, we need not address the other matters raised by appellate defense counsel.

For the reasons stated in II, we find the findings of guilty and the sentence incorrect in law; such findings and sentence are set aside. The competent evidence of record is sufficient to warrant a rehearing. Pursuant to Article 66(d), U.C.M.J. a rehearing may be ordered.

RAICHLE and SNYDER, Judges, concur.

## APPENDIX A

Citing Article 6(c), U.C.M.J., the accused argues that LtCol S was disqualified from serving as staff judge advocate due to his prior participation as investigating officer. The Government counters that Article 6(c) perhaps covers only *post-trial* activities. Due to our disposition in I above, we are not required to resolve this thorny problem.

Article 6(c) provides, in pertinent part: No person who has acted as ... investigating officer in any case may *later* act as a staff judge advocate or legal officer to any *reviewing* authority upon the same case (emphasis added).

As its plain language suggests, does Article 6(c) merely prohibit a staff judge advocate with prior participation as investigator from "later" advising "any *reviewing* authority" or does Article 6(c) also bar that staff judge advocate from pre-trial functions? The answer is far from clear.

Two paragraphs of the Manual for Courts-Martial appear to enlarge Article 6(c)'s specific prohibition, applying it equally to both pretrial and post-trial functions. M.C.M., 1969 (Rev.), para. 35*b*, provides, in pertinent part: "No person who has acted as investigating officer ... may later act as staff judge advocate or legal officer in the same case. See Article 6(c)." Similarly, M.C.M., para. 85*a*, states, in relevant part: "No person who has acted as ... investigating officer in any case may later act as a staff judge advocate or legal officer to any reviewing (convening) authority upon the same case (Art. 6(c))."

The Army Board of Review noted the issue in passing in *United States v. Leo,* 17 C.M.R. 387, 390 (A.B.R.1954) ("We do not express an opinion as to how far in this direction the Manual extends the scope of Article 6(*c*) of the Code....") Later, in *United States v. Powell,* 24 C.M.R. 835, 838 (A.F.B.R.1957), our Air Force predecessor squarely held:

That this article is equally applicable to pretrial as well as post-trial proceedings ... we have no doubt ....

The Court of Military Appeals has not furnished consistent guidance through the years as to whether Article 6(c) bars more than post-trial functions. In *United States v. Mallicote,* 13 U.S.C.M.A. 374, 32 C.M.R. 374, 376 (1962), the Court intimated that it would embrace the Air Force position in *Powell.* Other decisions support this general conclusion. *See United States v. Albright,* 9 U.S.C.M.A. 628, 26 C.M.R. 408, 413 (1958); *United States v. Hightower,* 5 U.S.C.M.A. 385, 18 C.M.R. 9, 11–12 (1955). On the other hand, several other Court of Military Appeals decisions, while not dispositive, suggest the opposite view. *See United States v. Clisson,* 5 U.S.C.M.A. 277, 17 C.M.R. 277 (1954) (Article 6(c) "is designed to assure a fair and impartial review.") *United States v. Haimson,* 5 U.S.C.M.A. 208, 17 C.M.R. 208, 219 (1954) (purpose of Article 6(c) to "insure strict impartiality in the first level review.") *See also United States v. Coulter,* 3 U.S.C.M.A. 657, 14 C.M.R. 75, 77 (1954).

Two decisions of that Court in 1963 becloud the issue. In *United States v. Dodge,* 13 U.S.C.M.A. 525, 33 C.M.R. 57 (1963), the Court assumed that the term "reviewing authority" in Article 6(c) was used interchangeably with the term "convening authority;" thus, an investigator was prohibited from subsequently acting as staff judge advocate for the pretrial advice. *United States v. Dodge, supra,* at 527. Two weeks later, the Court announced a seemingly contrary position in *United States v. Smith,* 13 U.S.C.M.A. 553, 33 C.M.R. 85

(1963). In contrast to *Dodge,* the *Smith* opinion dismissed as "pure speculation" the argument that Article 6(c)'s prohibition applied to both pretrial and post-trial matters. The Court went on to characterize the framers of Article 6c as "markedly silent" regarding their intent. *See generally* West, Permissible Bounds of Staff Judge Advocate Pretrial Activity, 23 Mil.L.Rev. 85, 86–89 (January 1964) (excellent analysis of the subject).

Finally, in *United States v. Hardin,* 7 M.J. 399, 402–403, Judge Fletcher, citing *Dodge* and *Smith,* found "no substantial support in the legislative history of the Code or our case law" to equate pretrial and reviewing functions and bar a staff judge advocate with prior participation from pretrial roles. In *Hardin,* Lieutenant Commander Nolta was Government counsel at a pretrial investigation; he then prepared the pretrial advice and was subsequently appointed and served as trial counsel. The accused contended that Article 6(c) disqualified Nolta from preparing the pretrial advice. The Court majority refused to accept the accused's argument that Article 6(c) disqualified Nolta, characterizing that contention as an "unjustified application of Article 6(c)." The Court explained that "the strict statutory disqualifications embraced in Article 6(c) which prevent a staff judge advocate from acting for a reviewing authority . . . do not *necessarily* apply to his performance of inherently *prosecutorial* functions . . . ." *United States v. Hardin, supra,* at 403 and n. 3. (emphasis added).

The underscored words make this case a conundrum. The Court chose not to overrule *Dodge* but instead counseled that Article 6(c) prohibitions "do not *necessarily* apply" to pretrial functions. Furthermore, although Chief Judge Fletcher's views had the specific concurrence of Judge Perry, Judge Cook strongly disagreed with the "prosecutorial functions" premise utilized by Chief Judge Fletcher. See *United States v. Hardin, supra,* at 405–406 and 407.

With changing Court of Military Appeals membership and possibly an extremely limited holding, we find in *Hardin* no clearcut authority overruling *Dodge.*

We believe *Dodge* and *Powell* represent the preferred view; thus, we perceive Article 6(c) as equally applicable to pretrial as well as post-trial proceedings. See M.C.M., para. 35*b.*