UNITED STATES, Appellee

v

STEVEN M. ROEDER, Private, U. S. Marine Corps, Appellant

22 USCMA 312, 46 CMR 312

No. 26,427

June 1, 1973

Lieutenant H. Neil Broder, JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was Lieutenant Arthur H. Rainey, JAGC, USNR.

Lieutenant Thomas L. Earp, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel G. L. Bailey, USMC, and Captain Donald B. Myers, USMCR.

## Opinion of the Court

DUNCAN, Judge:

Appellant was tried by a special court-martial composed of a military judge alone at Camp Pendleton, California, on April 28, 1972. He was convicted of the following charges and specifications:

Charge I: Violation of the Uniform Code of Military Justice, Article 86

Specification: In that Private

Steven M. ROEDER . . . did, on or about 22 December 1971, without authority, absent himself from his unit . . . and did remain so absent until on or about 28 December 1971.

Charge II: Violation of the Uniform Code of Military Justice, Article 91

Specification: In that Private Steven M. ROEDER . . . having received a lawful order from . . . his superior noncommissioned officer . . . to present his Armed Forces Identification Card, did, . . . on or about 1745, 28 December 1971, willfully disobey the same.

Charge IV: Violation of the Uniform Code of Military Justice, Article 128

Specification: In that Private Steven M. ROEDER . . . on or about . . . 25 January 1972, unlawfully strike Private First Class S. M. FRANDSEN . . . . in the head with his fists and kick him in the body with his feet.

Charge V: Violation of the Uniform Code of Military Justice, Article 134

Specification 1: In that Private Steven M. ROEDER . . . did . . . on or about 1745, 28 December 1971, wrongfully communicate to Sergeant R. L. FISCHER . . . a threat to injure him by tearing his eyes out.

Specification 2: In that Private Steven M. ROEDER . . . did . . . on or about . . . 25 January 1972, wrongfully communicate to Private First Class S. M. FRANDSEN . . . a threat to injure [him].

Appellant was sentenced to a bad-conduct discharge, confinement at hard labor for 3 months, and forfeiture of $165.00 pay per month for 3 months. One prior conviction by summary court-martial was introduced for consideration on sentence. The convening authority approved the adjudged sentence, but suspended the bad-conduct discharge for the period of confinement and 6 months thereafter with provisions for automatic remission. The supervisory authority disapproved the findings of guilty as to Charge II and its specification, but otherwise approved the findings and sentence as partially suspended by the convening authority. The Court of Military Review affirmed both the findings and sentence.

We granted review on the following issues:

I. Whether appellant was prejudiced as to sentence by the admission of evidence of a prior summary court-martial.

II. Whether the staff judge advocate's failure to summarize accused's testimony relative to the circumstances giving rise to Charge IV and its specification, and to specification 2, Charge V, prejudiced the accused.

I

Appellant was tried by a summary court-martial on August 19, 1971, and sentenced, as pertinent here, to 28 days confinement. Evidence of that conviction, Prosecution Exhibit 2, was introduced in aggravation of sentence at the present trial.

On the basis of our opinion in United States v Alderman, 22 USCMA 298, 46 CMR 298 (1973), the court erred in admitting into evidence, for sentence purposes, the previous summary court-martial conviction at which he was without representation of counsel. See also United States v Tucker, 404 US 443 (1972).

II

The staff judge advocate submitted his review to the supervisory authority as he was required to do, pursuant to Article 61, UCMJ, 10 USC § 861, and paragraph 85, Manual for Courts-Martial, United States, 1969 (Revised edition). In his review, under the caption "SENTENCE—SUMMARY OF THE EVIDENCE," there was a synopsis of appellant's sworn testimony in extenuation and mitigation. With regard to the matters engendering Charge IV and its specification and to Charge

V and specification 2 thereunder, the staff judge advocate instructed the supervisory authority that "[h]e [appellant] assaulted PFC FRANDSEN because he made some bad remarks about his wife." This affirmation expresses the aggregate of the information furnished for the supervisory authority's edification, concerning the underlying factors of the assault and the wrongful communication of a threat against Frandsen.

In contrast to the staff judge advocate's statement, both in tone and explicitness, was appellant's uncontroverted testimony as to these acts. On direct and cross-examination, appellant testified as follows:

### DIRECT EXAMINATION

Q. . . . The Specification under Charge IV and Specification 2 under Charge V indicate that at approximately 0930 on 25 January you assaulted PFC FRANDSEN and communicated a threat to him. Would you explain to the court the circumstances surrounding these two offenses?
A. Yes, sir. PFC FRANDSEN had been making some very vulgar statements about my wife and some other statements about myself concerning her.

Q. About your wife?
A. Yes, sir.

Q. How did these statements arise?
A. I had gotten a letter from my father saying that my wife was okay and that she was complaining because she hadn't gotten any letters. PFC FRANDSEN said that everything would be all right and that I would find her the same way that I did when I left. I asked him how was that, and he said, "freshly f——."

Q. Did he say other things?
A. He made other statements that my father was probably taking care of her for me and other statements like that.

Q. How long did he keep up this verbal badgering?
A. About 15 or 20 minutes.

Q. What did you do during this time?
A. I kept telling him to shut his mouth and I told him that if he didn't we would get into a fight and he kept it up and he kept it up until we get into a fight.

. . . . .

### CROSS-EXAMINATION

. . . . .

Q. You pleaded guilty and have been found guilty of threating PFC FRANDSEN. Why did you threaten him that he not drop the dime about the incident if you thought you were right in defending your wife's name?
A. Well, sir FRANDSEN was known as a "dime dropper"[1] in the company. He had been telling on everybody about everything he could tell on.

Q. Well, if you thought you were[n't] wrong, why did you threaten him? You wouldn't have to worry about it if you were right.

DC: Objection. There has been no testimony that he thought he was wrong.

MJ: Try to incorporate facts that are in evidence.

TC: I'll rephrase that question.

Q. Did you think you were right in assaulting PFC FRANDSEN?
A. I believe I was defending my wife's honor.

Q. Did you think you were right in assaulting him?
A. Yes, sir, I did.

Q. If you thought you were right as you have testified, why did you threaten him?
A. Well, sir, like I said before, he had been going around dropping dimes on everything and I was al-

---

[1] Dime dropper is a term which refers to someone who is considered an informer. The word is derived from the act of an informer putting a dime in a phone to call and inform to authorities.

ready awaiting a court-martial at the time.

The Government contends that the staff judge advocate's review should advise the supervisory authority of all pertinent matters with respect to the sentence to be approved. In so doing, the staff judge advocate retains a degree of discretion, which herein was allegedly properly exercised.

It is true that in United States v Cruse, 21 USCMA 286, 288, 45 CMR 60, 62 (1972), we said:

A staff judge advocate is necessarily selective in summarizing the evidence for a post-trial review.

But, we went on to say:

His exercise of discretion is subject to review for abuse. . . . A review that is incomplete or misleading on an important point is unacceptable.

■ Frandsen's conjectures about how appellant would find his wife and her activities with his father, even to the most imaginative reader would amount to more than mere "bad remarks about his wife." Furthermore, contrary to assertions by government counsel, we believe that even in the Marine Corps as between a Private and a Private First Class, one could not reasonably infer from the phrase "bad remarks about his wife," a meaning that would have a sexual or profane significance. The staff judge advocate's depiction of Frandsen's remarks as "some bad remarks about his wife's is an abuse of discretion as to what constitutes a proper summary. United States v Cruse, supra. The staff judge advocate's review was prejudicially incomplete and inadequate because it fatally omitted a fair summary and consideration of his sworn testimony in extenuation and mitigation of sentence. Such testimony clearly represented a material factor bearing on the propriety of any punishment awarded. The mere cryptic remark by the staff judge advocate that appellant's conduct of threatening and striking was the result of "bad remarks" by Frandsen wholly ignores the potential for provocation existing at the critical time. Hence, the cursory treatment given to appellant's testimony prejudicially minimizes, and to an even greater degree nullifies, the favorable nature of appellant's testimony. Further, this review could have misled the supervisory authority into believing that it was a simple wisecrack.

In conclusion, the failure to furnish an appropriate discussion of this testimony deprived the supervisory authority of an opportunity to make an independent determination and assessment as to the appropriateness of appellant's sentence. It should be remembered the supervisory authority has absolute power to disapprove the findings and sentence, or any parts thereof, for any or no reason, legal or otherwise. United States v Rivera, 20 USCMA 6, 7, 42 CMR 198, 199 (1970). See Article 64, UCMJ, 10 USC § 864. It is while the record is at this level that an accused has his best opportunity for relief. Prejudice affecting the sentence is just as subject to condemnation as prejudice which influences finding. United States v Coulter, 3 USCMA 657, 660, 14 CMR 75, 78 (1954).

Although the supervisory authority presumably accorded appellant a thorough review[2] as to findings, there is still a fair chance that had he known more about the circumstances surrounding appellant's contact with with Frandsen he might have mitigated the sentence. Cf. United States v Stevenson, 21 USCMA 426, 428, 42 CMR 200, 202 (1972). Consequently, we find that the staff judge advocate's review could well have materially prejudiced appellant's substantial right to have a full and fair review of all matters relevant to sentence appropriate-

---

[2] The supervisory authority set aside a finding of guilty and dismissed Charge II due to reversible error committed by the military judge. However, this action was in accord with the staff judge advocate's recommendation.

ness as required by law.  Articles 61 and 64, UCMJ; paragraphs 85b and 86, Manual, supra.

The decision of the Court of Military Review is reversed.  The record of trial is returned to the Judge Advocate General of the Navy for reference to a convening authority for further proceedings under Articles 61 and 64, UCMJ, with instructions that consideration of sentence should be made without regard to the summary court-martial conviction improperly admitted into evidence.  Thereafter, a new review and action at the supervisory authority level should be had.

Judge QUINN concurs.

DARDEN, Chief Judge (concurring in part and dissenting in part):

I join with Judge Duncan in returning this case to the supervisory authority for preparation of a new post-trial review.  For the reasons set forth in my dissenting opinion in United States v Alderman, 22 USCMA 298, 46 CMR 298 (1973), I disagree with the conclusion that the prior summary court-martial conviction was inadmissible.  I would not direct the convening authority to give further consideration to the sentence without regard for that conviction.